UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

            - against -

FARAKH IQBAL,

                    Defendant.
------------------------------------------------------------X

**ORDER**

CV 14-209 (SJF) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      Defendant Farakh Iqbal ("Defendant" or "Iqbal") previously pleaded guilty to Count 1 of the Superseding Indictment, Conspiracy to Commit Wire Fraud. *See* DE 65. After reviewing the report of the pre-sentence investigation, defendant's counsel notified Judge Feuerstein in a letter motion that "[t]he parties have been unsuccessful in their efforts to reach a consensus with regard to the guidelines[1] applicable to Iqbal's case." DE 89. On that basis, counsel requested that a *Fatico* Hearing be scheduled. *Id.* Judge Feuerstein granted the request and referred the *Fatico* Hearing to this Court for a report and recommendation.

      The Probation Department used the 2015 Federal Sentencing Guidelines Manual to compute the offense level for defendant Iqbal.[2] USSG §1B1.11. For Count I, Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349), to which defendant Iqbal pleaded guilty, the base offense level under USSG §2X1.1(a) is 7, taking into account that wire fraud carries a statutory maximum of 20 years or greater. PSR ¶ 17. According to the PSR, defendant Iqbal is accountable for a loss of $1,163,874.00 which carries a 14-level increase under USSG

---

    [1] To date, neither defendant's counsel nor counsel for the Government has stated specifically which actual categories within the offense level calculation are in dispute. However, as addressed later on in this Order, the Court assumes that the amount of loss is the primary focus of the disagreements.

    [2] *See* April 21, 2016 Pre-Sentence Investigation Report ("PSR") [DE 70], ¶ 16.

§2B1.1(b)(1)(H) for a loss greater than $550,000 but not greater than $1.5 million. *Id.* ¶ 18. Defendant Iqbal was also assessed a two-level enhancement for his adjusted role in the offense, here specifically for abusing a position of public or private trust of the use of a special skill. USSG §3B1.3 *Id.* ¶20. An additional two-level adjustment was assessed for defendant's being an organizer, leader, manager or supervisor in criminal activity – other than described in USSG §3B1.1(a) or (b). USSG §3B1.1(c). *Id.* ¶21. The Adjusted Offense Level calculated by the Probation Department is 25, from which three levels were deducted for acceptance of responsibility, resulting in a total offense level of 22. *Id.* ¶ 27

During the first day of the *Fatico* hearing, the Government presented testimony from three witnesses, namely, co-defendant Omar Butt, co-defendant Hamid Shahbaz, and Elizabeth Greaney, Special Agent with the U.S. Department of Agriculture. At the conclusion of the first day, counsel for the Government sought to offer into evidence a number of exhibits. Among other things, the Government offered the plea agreements for Mansha Ullah and Abdul Majeed Chaudhry (GX 15), without objection. *Fatico* Hrg. 180. However, when the Government sought to introduce the 3500 material of Tahir Butt (3500 TB-1 through 3500 TB-6) in lieu of producing him as a live witness, defense counsel objected. *Id.* The first page of the Tahir Butt 3500 material is a single page document entitled "Memo of Conversation" which summarizes a "Ruse interview to ascertain identification of owner and clerk of Station Deli 81 Northern Blvd., Shirley." It is dated January 15, 2013 and is signed by Special Agent Lisa Barrett of the U.S. Department of Agriculture. At the conclusion of the summary is the notation "See attached survey." The next five pages are a USDA "Food Stamp Program Annual Survey for Participating Store Employees" which appears to have been signed by Tahir Butt and is dated January 15, 2013. Next, 3500 TB-2 is a USDA "Advice and Waiver of Rights" form which is

dated May 1, 2014 and appears to be signed by Tahir Butt. A two-page "Proffer Agreement" dated December 3, 2014 is designated 3500 TB-3 and appears to be signed by AUSA Charles Kelly, USDA Special Agent Lisa Barrett, Tahir Butt, and Jack Piana, Esq., attorney for Tahir Butt. 3500 TB-4 is a "Memorandum of Interview" with a heading "USDA Office of Inspector General – Investigations" dated December 3, 2014 which summarizes the Tahir Butt proffer session held on December 3, 2014. Similarly, 3500 TB-5 is the summary of Tahir Butt's further proffer session held on December 16, 2014. Finally, 3500 TB-6 is Tahir Butt's Plea Agreement from June 2014.

After acknowledging that hearsay generally is permitted at a *Fatico* hearing, defense counsel went on to state that

> . . . there are limits, and Mr. Kelly is attempting to introduce the record of every interview – I don't know if it's every interview, but certainly a number of interviews of an individual whose 3500 material I received in this case, interviews conducted by law enforcement, proffer sessions, proffer agreements, memos of interviews, transcripts of proceedings. It's essentially a C plus entire version of events in this case which has relevance without opportunity of cross-examination.

*Id.* 181. In response, counsel for the Government argued that since this is a *Fatico* hearing, the rules of evidence do not apply. *Id.* The AUSA added "[a]nything that's relevant and helpful to the Court and has an indicia of reliability is properly accepted." *Id.* at 182. The Government took the position that Tahir Butt's testimony was "largely cumulative to his son who testified today. . . we were leaning towards not calling him . . . we thought offering his 3500 would get his statements before the Court [and] . . . they don't need to meet the rules of evidence." *Id.* The Court reserved its decision, stating that in fairness to both sides, it would take some time to review the issue instead of ruling off the cuff. *Id.*

3

Having had the time to carefully review the admissibility issue, the Court points out the following circumstances. According to the Pre-Sentence Report (the "PSR"), Tahir Sarwar Butt ("Tahir") "purchased" Station Deli in Shirley, New York on December 1, 2012. PSR ¶ 7. About 11 days later, Tahir applied to the USDA Food and Nutrition Service for approval to participate in SNAP on behalf of the deli. *Id.* Station Deli became an authorized Retailer and participated in SNAP on February 14, 2013. *Id.* Tahir and his son Omar Butt ("Omar") were cashiers at the deli. Although they were listed as the owners of the deli, they were employees of Iqbal who continued to operate the deli. *Id.*

> The PSR further states that
>
> [t]he fraudulent scheme involved Iqbal directing Omar and Tahir to engage in a fraudulent scheme in which they exchanged SNAP benefits for cash, a violation of policy. In doing so, they fraudulently debited EBT cards as though SNAP befit recipients had purchased food products when no such purchases were made. They also agreed with SNAP residents to give the recipients a portion of the cash proceeds generated from the fraudulent transactions and to keep a portion for themselves.

*Id.* ¶ 8.   With respect to Tahir Butt, the PSR describes him as "one of the principals involved in the instant scheme."[3]   *Id.* ¶ 13.   Defense counsel disagrees with the Government's position that

---

[3]   The Court points out that the Probation Department issued an Addendum to the PSR which states as follows:

"On May 3, 2017, the undersigned was contacted by the case agent to advise of an error in the Offense Conduct section of the presentence report. Specifically, the case agent advised that while the loss amount attributable to the defendant is correct, the PSR is incorrect in attributing the loss to one specific location, Station Deli, located at 81 Northern Boulevard, Shirley, New York, operated by Tahir Sarwar Butt and Omar Butt. In fact, the defendant owned three other stores besides the one named in the PSR, and was signatory on the bank accounts of all of the stores. The additional stores owned by the defendant are AMC Convenience Store, Inc., located at 461 Station Road, Bellport, New York, and operated by Abdul Majeed Chaudhry; Green Gas Station Inc., doing business as Trackmart, located at 1741 Montauk Highway, Bellport, also operated by Chaudhry; and Quick Grocery Store, Inc., located at the same location

4

Tahir Butt's testimony is largely cumulative of Omar Butt's testimony.  Counsel argues that Tahir's "perception of events" is distinct from his son's and that he is a core witness and a cooperator trying to get a 5k1.1 letter.  *Fatico* Hrg. 183.

"[T]here is no doubt that the Due Process Clause is implicated at sentencing, and that a defendant has a right to question procedures that lead up to the imposition of sentence." *United States v. Carmona*, 873 F.2d 569, 574 (2d Cir 1989) (citing *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197, 1204, 51 L.Ed.2d 393 (1977)).  However, all of the strict procedural safeguards and evidentiary limitations of a criminal trial are not required at sentencing. *Williams v. New York*, 337 U.S. 241, 250, 69 S.Ct. 1079, 1084, 93 L.Ed. 1337 (1949); *United States v. Fatico*, 579 F.2d 707, 711 (2d Cir.1978).  "It is not a denial of due process for the trial judge, when determining sentence, to rely on evidence given by witnesses whom the defendant could neither confront nor cross-examine." *Carmona*, 873 F.2d at 574.  A district court judge's discretion in sentencing is "largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Pugliese*, 805 F.2d 1117, 1122 (2d Cir. 1986); *see United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972).

Further, sentencing proceedings are not designed to be full-blown evidentiary hearings or mini-trials. *Pugliese,* 805 F.2d at 1123 (citing *United States v. Needles*, 472 F.2d 652, 657-58 (2d Cir.1973)).  Notwithstanding that fact, while a court may consider a wide range of information, "it must also ensure the defendant's due process right to receive a sentence based on

---

in Bellport as AMC Convenience Store (which by then had closed) and operated by Hamid Shahbaz.  The agent informed that the loss figure attributed to him is derived from the losses incurred at all four locations, and that no amendments to the advisory guideline computations are warranted."

5

accurate and reliable information." *United States v. Wyatt*, 06-CR-782, 2008 WL 2433613, at *7 (E.D.N.Y. June 12, 2008) (citing *United States v. Juwa,* 508 F.3d 694, 700 (2d Cir. 2007); *see U.S. v. Martinez*, 413 F.3d 239, 243 (2d Cir. 2005) ("Due process merely protects a defendant from being sentenced on the 'basis of materially incorrect information' and requires at least 'some minimal indicia of reliability to accompany a hearsay statement.' When there is a significant possibility of misinformation, the sentencing court may require the government to verify the information.").

      The Court notes that Tahir Butt is a co-defendant in this case, is the individual who "purchased" Station Deli, is the one who applied to the FNS for approval to participate in SNAP and who actually worked at the deli. He is a significant witness and so the Court will require that he be presented for the continued *Fatico* Hearing if the Government wishes to have his 3500 material admitted into the record and considered with respect to defendant Iqbal's offense guideline calculations. The Court declines to accept the referenced Tahir Butt 3500 material without giving defendant Iqbal's attorney the opportunity to cross-examine Tahir Butt.

      The Government also seeks to offer into evidence the 3500 material of Abdul Asif (3500 AA-1 and 2) which consists of two memoranda of interviews of Mr. Asif in lieu of producing him as a witness. Fatico Hrg. 183. Defendant's counsel has objected, asserting that Asif is a critical witness in that there came a point in time in 2011 "when Abdul Assif becomes the owner, the corporate owner of the Shirley location, and he is active at that location for a significant period of time." *Id.* at 184. According to defense counsel, there is evidence that Asif managed other people, including Omar Butt, in the timeline of losses being attributed to defendant Iqbal. *Id*.

"A court is free to consider hearsay evidence . . . so long as it permissibly concludes that the evidence is reliable." *United States v. Kolawole*, 1 Fed. App'x 93, 94-95 (2d Cir 2001); *see Townsend v. Burke*, 334 U.S. 736, 740-41, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948); *United States v. Sisti*, 91 F.3d 305, 312 (2d Cir. 1996); *Pugliese*, 805 F.2d at 1124 ("A district court has an obligation to assure itself that the information upon which it relies in sentencing defendants is both reliable and accurate."). "Corroboration is required to ensure 'the reliability of evidence that is difficult to challenge ... through cross-examination or otherwise....'" *Pugliese*, 805 F.2d at 1123 (quoting *U.S. v. Fatico*, 579 F. 2d 707, 713 (2d Cir. 1978) (*Fatico I*).

The memoranda of the two interviews conducted with Abdul Asif are clearly hearsay. The Government takes the position that Asif is neither a co-defendant nor an informant. The Court observes that the memoranda of statements are neither signed nor sworn to. From the 3500 material, it is evident to the Court that Asif is not a critical witness when compared to the co-defendants here. However, for the Court to consider the information in the 3500 material, the Government will need to demonstrate the necessary corroboration of the information gleaned from Asif. The Government will have the opportunity to do so at the continued Fatico Hearing. Otherwise, the Government is free to produce Asif for live testimony. The same holds true for any other 3500 material the Government may seek to introduce.

Accordingly, for the November 19, 2020 continued *Fatico* Hearing:

(1) The Government will need to make arrangements with the U.S. Marshal Service and the correctional facility to produce defendant Farakh Iqbal in Courtroom 840 for the November 19 hearing;

(2) The Government will need to make arrangements as well to have Tahir Butt produced to testify at the November 19 hearing if it wishes to have the 3500 material concerning Tahir Butt entered into evidence; if Tahir Butt is incarcerated

7

and there are issues regarding COVID-19, the Court will permit his testimony via videoconference into the courtroom at the time of the hearing;

(3) Attorney Keating must provide the Court in writing on ECF by November 12, 2020 a statement setting forth the actual category or categories within the offense level calculation which he and his client are disputing;

(4) To the extent AUSA Kelly or Attorney Keating intend to introduce any other witnesses at the continued hearing, counsel are directed to notify the Court in writing by November 12, 2020 of the names of those witnesses and how counsel intends to introduce them for the hearing *(i.e.*, in-person, by videoconference, etc.). Any arrangements concerning the testimony of witnesses by videoconference remain the responsibility of the attorney calling that witness. Counsel are urged to consult with personnel in the IT Department at the Alfonse D'Amato Courthouse to ensure the proper transmission and production of remote testimony if the parties intend to proceed in that manner.

Counsel are advised that all COVID-19 protocols in place for the Alfonse D'Amato Courthouse shall remain in place for the November 19, 2020 continued hearing and shall be adhered to by all those involved in this hearing. Only one live witness will be permitted in the courtroom at any given time and appropriate cleaning protocols will be observed before a subsequent live witness is permitted to testify. All persons in the Courtroom will be required to wear masks for the duration of the proceedings. Any questions in the interim should be put in writing and filed on ECF.

**SO ORDERED.**

Dated: Central Islip, New York
October 23, 2020

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

8